**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STOCKTON MORTGAGE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:26-cv-08767 |
| | ) | |
| PEERLESS INDEMNITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Stockton Mortgage Corporation ("Stockton"), by counsel, states as its

Complaint against Defendant Peerless Indemnity Insurance Company ("Peerless"), as

follows:

## PARTIES

1.      Stockton is a Kentucky corporation with its principal place of business

located in Frankfort, Kentucky.

2.      Stockton holds a mortgage on the property that is the subject of this lawsuit.

3.      Peerless is an Illinois company with its principal place of business located in

Warrenville, Illinois.

4.      Peerless insures the subject property.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to

28 U.S.C. § 1332(a), as the citizenship of the parties is completely diverse, and the amount

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 93(a)(1) and 1391

because the subject contract insures property located in this District, and a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

### *Renovation, Collapse, and Demolition of the Dwelling*

7. On June 12, 2025, Brittany Hollins ("Hollins") obtained a $204,887 loan from Stockton secured by a mortgage ("Mortgage") recorded against the real property located at 1543 W. 120th Street, Chicago, Illinois 60643 ("Property"). A true and correct copy of the Mortgage is attached as **Exhibit A**.

8. In or around June 2025, Hollins hired F & M Property Solutions, LLC ("F & M") to perform general contractor construction and renovation work on the two-flat dwelling located on the Property ("Dwelling").

9. F & M's use of defective material and renovation methods caused part of the Dwelling to collapse on or around June 30, 2025, rendering the Dwelling uninhabitable.

10. As a result of the collapse of the Dwelling caused by F & M, on August 5, 2025, the City of Chicago ("City") filed a housing complaint in the Circuit Court of Cook County, Illinois, Case Number 2025-MI-401109, and filed a second amended housing complaint on September 25, 2025. A true and correct copy of the second amended housing complaint ("Complaint") is attached as **Exhibit B**.

11. In its Complaint, the City alleged that F & M's "subpar workmanship" caused a "[w]all collapse at west elevation on [the Dwelling]" creating "dangerous and hazardous conditions" at the Property. (Ex. B at 3.)

12. The City further alleged that as a result of the collapse of the Dwelling caused by F & M, the Dwelling was rendered "dangerous and unsafe," posed "a danger to the public

health, safety, and welfare," and was "beyond reasonable repair." (Ex. B at 6, 9.)

13.     Accordingly, on October 23, 2025, the Circuit Court of Cook County, Illinois issued an emergency order holding that because of the collapse caused by F & M, the Dwelling was beyond reasonable repair and posed a dangerous risk and hazard to the public, and therefore the Court authorized demolition of the Dwelling. A true and correct copy of the demolition order is attached as **Exhibit C**.

14.     Thereafter, the collapsed Dwelling was demolished.

15.     Stockton's Mortgage on the Property secures a debt with an outstanding principal balance of $204,589.47.

16.     As a result of the collapse that led to the demolition of the Dwelling, Stockton has lost the full value of its collateral securing the unpaid debt and has been forced to incur attorneys' fees and expenses to protect its interest.

### *Peerless Denies Stockton's Claim*

17.     Peerless has insured the Dwelling at all relevant times.[1] A copy of the Homeowner Policy Declarations ("Declarations") is attached as **Exhibit D**; a copy of the Homeowners Policy ("Policy") is attached as **Exhibit E**; and a copy of the Special Provisions – Illinois that amends the Policy is attached as **Exhibit F**.

18.     Hollins is the named insured, and Stockton is the additional insured mortgagee under the Policy. (Ex. D at 1, 4.)

19.     Under the Policy, Peerless agreed to cover, *inter alia*, the "primary dwelling on the residence premises shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways, or

---

[1] Peerless underwrites Liberty Mutual Insurance and the Policy. (*See* Ex. D at 4; Ex. E at 1 ¶ 2.)

walkways," up to a limit of $663,400. (Ex. E at 4.)

20. The "primary dwelling on the residence premises shown" in the Policy Declarations is the two-flat Dwelling. (*See* Ex. D at 1; Ex. E at 4, ¶ p.)

21. Peerless agreed to cover "accidental direct physical loss" to the Dwelling, including, *inter alia*, "direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following: . . . Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation." (Ex. E at 5, 15-16.)

22. Peerless also agreed to cover "damage to [the Dwelling] resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair, or demolition of the property," up to a limit of $66,340. (*See* Ex. D at 3; Ex. E at 14.)

23. The Policy provides that a claim may be made for "loss or damage to buildings on an actual cash value basis, but not exceeding the smallest of the following amounts: (a) The applicable limit of liability; (b) The direct financial loss you incur; or (c) Our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss." (Ex. E at 17-18.)

24. "Actual cash value" is defined in the Policy as: "when damage to property is not economically repairable or loss prevents repair, actual cash value means the replacement cost of new, identical, or nearly identical property, less reasonable deduction for wear and tear, deterioration, or obsolescence." (Ex. F at 1.)

25. The Policy also covers debris removal: "We will pay the reasonable expense

4

you incur in the removal of . . . debris of covered property provided coverage is afforded for the peril causing the loss[.]" (Ex. E at 13.)

26.     Hollins has paid the Policy premiums, and she and Stockton have complied with all other applicable conditions under the Policy.

27.     On June 23, 2026, Stockton submitted a claim under the Policy. A copy of Stockton's claim is attached as **Exhibit G**.

28.     On July 16, 2026, Peerless denied Stockton's claim, stating that the Policy provides only partial coverage for the loss. Specifically, Peerless stated that it would only be "willing to consider costs that have been incurred for the demolition of the property." A copy of Peerless's denial letter is attached as **Exhibit H**.

## COUNT I
### Breach of Contract

29.     Stockton realleges and incorporates by reference the allegations contained in paragraphs 1 through 28 as though fully set forth herein.

30.     Under the Policy, Peerless agreed to cover "direct physical loss to [the Dwelling] involving collapse of the [Dwelling] or any part of the [Dwelling] if the collapse was caused by . . . use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation." (Ex. E at 15, ¶ 10.b.(6).)

31.     Peerless also agreed to cover "damage to the [Dwelling] resulting from a covered cause of loss in compliance with any ordinance or law that regulates the . . . demolition of the property." (Ex. E at 14, ¶ 7.)

32.     As alleged above, F & M's use of defective material and renovation methods caused the Dwelling to collapse, rendering it uninhabitable and subject to demolition.

5

33. As a result, Stockton has lost the full value of its collateral securing the unpaid debt of $204,589.47.

34. Peerless breached the Policy by denying coverage for Stockton's loss resulting from the collapse of the Dwelling.

35. Moreover, Peerless's denial of coverage was vexatious and unreasonable in violation of Section 155 of the Illinois Insurance Code because Peerless cited inapplicable provisions of the Policy to justify its denial of coverage and otherwise failed to provide a reasonable or accurate explanation for the basis in the Policy for the denial. *See* 215 ILCS 5/155.

36. Accordingly, Stockton is entitled to recover its reasonable attorneys' fees and costs plus statutory penalties pursuant to 215 ILCS 5/155.

37. Stockton has fully performed its obligations under the Policy, and all conditions precedent to bringing this cause of action have been performed or have occurred.

WHEREFORE, Stockton Mortgage Corporation respectfully requests that the Court enter judgment in its favor and against Peerless Indemnity Insurance Company for its actual damages, attorneys' fees and costs, and statutory penalties pursuant to 215 ILCS 5/155, and pre-judgment and post-judgment interest, and for any further relief this Court deems just and equitable.

Respectfully submitted,

STOCKTON MORTGAGE CORPORATION

/s/ Alan M. Ritchie
One of its attorneys

Jeffrey D. Pilgrim
Alan M. Ritchie
PILGRIM CHRISTAKIS LLP
One South Dearborn, Suite 1420
Chicago, Illinois 60603
Ph.: 312-924-1773
Fax: 312-939-0983
jpilgrim@pilgrimchristakis.com
aritchie@pilgrimchristakis.com